**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **DARIN BORNE, Individually and on Behalf of All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | |
| | § | **CIVIL ACTION NO._____** |
| **v.** | § § | |
| **AAY SECURITY LLC,** | § § | |
| **Defendant.** | § | **JURY DEMANDED** |

## ORIGINAL COMPLAINT — COLLECTIVE ACTION

### I.  SUMMARY

1.      AAY SECURITY LLC ("Defendant") paid its security officers at a straight time rate for their overtime hours worked instead of at the time-and-one-half rate required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA" or "the Act"). Darin Borne, a security officer formerly employed by Defendant, now brings this FLSA collective action to recover unpaid overtime wages, liquidated damages, attorney's fees and costs for himself and all others similarly situated, pursuant to Section 216(b) of the Act.

### II.  SUBJECT MATTER JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under 29 U S.C. § 216(b) and 28 U.S.C. § 1331.

3.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because a substantial portion of the events forming the basis of this suit occurred in the Eastern District of Texas, and because Defendant's principal office in the state is located there.

### III.  PARTIES AND PERSONAL JURISDICTION

4.      Plaintiff Darin Borne is an individual residing in Beaumont, Jefferson County, Texas.  Plaintiff's written consent to be a party to this action is attached hereto as Exhibit "A."

5.      The Class Members are all of Defendant's current and former security officers (and any persons who performed substantially similar job duties under other titles) who worked more than forty (40) hours in a workweek but were paid at a straight-time rate for overtime hours worked at any time starting three years before the filing of this Complaint up to the present.

6.      Defendant AAY SECURITY LLC, is a foreign limited liability corporation authorized to do business in Texas. Its principal office is located at 4749 N. Twin City Highway, Suite 220, Port Arthur, Texas 77642. Defendant can be served with process via its registered agent for service, Northwest Registered Agent LLC, 700 Lavaca, Suite 1401, Austin, Texas 78701.

### IV.  COVERAGE

7.      At all material times, Defendant has been an employer within the meaning of 29 U.S.C. §203(d) because Defendant had the power to hire or fire Plaintiff and the Class Members; to control their work schedules and their conditions of employment; and to determine their rates of pay and method of payment.

*Enterprise Coverage*

8.      At all material times, Defendant has been an enterprise within the meaning of 29 U.S.C. §203(r) because Defendant and its agents, officers and employees engaged in related activities for the common business purpose of providing security services to maritime, petrochemical, and refinery industries in the United States.

9.      At all material times, Defendant has been an enterprise in commerce within the meaning of Section 3(s)(1) of the FLSA because Defendant has had and continues to have

employees engaged in commerce through the provision of security services to the maritime, petrochemical and refinery facilities in the United States. 29 U.S.C. § 203(s)(1).

10.    Defendant has had, and continues to have, an aggregate annual gross business revenue in excess of the statutory standard.

*Individual Coverage*

11.    At all material times, Plaintiff and the Class Members were individual employees engaged in commerce as defined and set forth in 29 USC §§ 203 and 207.

12.    In their capacity as security officers or workers performing substantially similar work under other titles, Plaintiff and the Class Members provided security and protection to goods moving in interstate commerce through interstate pipelines and across the waterways of the United States.

V.   FACTS

13.    Defendant is a security company that provides trained professional security officers to maritime, petrochemical, and refinery facilities in the United States, including at Cheniere Energy, Inc.'s Sabine Pass LNG Terminal in Cameron, Louisiana ("LNG Terminal"). Defendant offers a variety of security services, including, if requested, the provision of an around-the-clock, twenty-four hour per day security presence at Defendant's customers' facilities.

14.    Plaintiff is a resident of Beaumont, Texas. He was hired by Defendant around September 2015 to work as a security officer. Defendant offered and Plaintiff accepted an hourly rate of pay of $24.00 per hour. This was an advertised rate that Defendant offered to all of its newly hired security officers.

15.    Defendant trained Plaintiff and about 30 co-workers for approximately three weeks around September/October 2015, with approximately two weeks of the training taking place in

Beaumont, Texas and one week at the LNG Terminal. Defendant failed to pay Plaintiff and his co-workers for this training time until approximately three months later, in January 2016. Defendant then paid Plaintiff and his co-workers only $15.00 per hour, rather than the agreed $24.00 per hour rate.

16.     Plaintiff and his co-workers completed training around October 2015, and then were told to wait until January 2016 to start working at the LNG Terminal.

17.     In January 2016, Plaintiff and his co-workers began providing security at Cheniere Energy, Inc.'s LNG Terminal in Cameron Parish, Louisiana. Plaintiff worked as a security officer for Defendant at the LNG Terminal from January 2016 until approximately September 18, 2017.

18.     Plaintiff's usual schedule was six days on, seven days off, with each shift lasting thirteen hours, except for Sundays, which were twelve-hour shifts. He was paid $24.00 per hour for this work.

19.     In late August 2017, Hurricane Harvey approached the Gulf Coast, threatening a wide stretch of land across Texas and Louisiana. Defendant advised Plaintiff and his co-workers that they would be the "ride-out crew" to protect the LNG Terminal on an around-the-clock basis during the hurricane, working 12-hour alternating shifts with another crew and remaining at the facility throughout the week even when not standing guard. Plaintiff and his co-workers were promised their usual hourly rate for all hours on-site as well as overtime premium at a time-and-one-half rate for hours worked in excess of 40 in the week.

20.     Plaintiff and his co-workers duly protected the LNG Terminal on an around-the-clock basis from Monday August 28, 2017 through Friday, September 1, 2017.

21.      On Thursday, September 7, 2017, Plaintiff and his co-workers received pay for their work protecting the LNG Terminal during the week of Hurricane Harvey. Defendant paid

Plaintiff and his co-workers at a straight time rate of $24.00 per hour for their hours on shift and only $15.00 per hour for the other 12 hours per day spent at the LNG Terminal. Plaintiff and his co-workers received no time-and-one-half overtime pay.

22.    That same day, Plaintiff and his co-workers met with Defendant's shift supervisor Kenneth Luce to complain about the failure to receive overtime pay, as well as the fact that much of the pay received was below the security officers' $24.00 per hour hourly rate. Defendant's shift supervisor agreed that Plaintiff and his co-workers had been promised more than they had received, and that he would try to find out what had happened.

23.    Plaintiff's co-workers later spoke to Cheniere Energy, Inc. personnel, who advised that Cheniere Energy, Inc. had paid Defendant enough money to pay the security guards for all hours worked during Hurricane Harvey plus overtime at a time-and-one-half rate.

24.    Plaintiff took an active part in the September 7, 2017 meeting regarding Defendant's failure to pay the wages due. Plaintiff became upset during the meeting, and began to feel unwell. He suspected that his blood pressure was getting unsafely high, and he informed his shift supervisor that he was feeling unwell. He requested permission to leave in order to seek medical attention. The shift supervisor replied "Do what you need to do." Plaintiff's co-workers were witnesses to this exchange.

25.    After leaving the meeting, Plaintiff went to the Golden Triangle Emergency Center in Port Arthur, Texas, where he was diagnosed with an anxiety attack and high blood pressure. After being treated with blood pressure medication and resting at the Emergency Center for approximately ninety minutes, Plaintiff's blood pressure dropped and he was given a return-to-work slip with no restrictions. Plaintiff then telephoned Kenneth Luce and advised that Plaintiff had received a return-to-work slip and that he intended to return to work the following day, Friday

September 8, 2017. Plaintiff's supervisor advised that Defendant's Project Manager, Marty Kluick, had given instructions that Plaintiff should not return to work on Friday, and should instead report to work on Monday, September 11, 2017. Plaintiff acknowledged the instruction and agreed to return to work on Monday September 11, 2017.

26.     On Saturday, September 9, 2017, Plaintiff received a voicemail from Kenneth Luce advising that the Project Manager had spoken with company owners Andy and Yolanda Kohut, and that the owners were instructing Plaintiff not to return to work until further notice. Plaintiff complied.

27.     On Friday, September 15, 2017, Plaintiff received a telephone call from Pam Kramer, an administrative employee of Defendant, who advised Plaintiff that a meeting had been scheduled with Defendant's owners on Monday September 18, 2017 at 11:00 a.m. at Defendant's main office in Part Arthur, Texas. Plaintiff acknowledged the instruction and agreed to present himself for the meeting.

28.     At 11:00 a.m. on Monday, September 18, 2017, Plaintiff met with Shift Supervisor Kenneth Luce, Project Manager Marty Kluick, and Owner Andy Kohut. Plaintiff was asked by Marty Kluick if he knew why the meeting was being held. When Plaintiff replied that he did not, Kluick stated that Plaintiff was accused of abandoning his post without permission on September 7, 2017. Plaintiff replied that this was not accurate, and that he had stated to Shift Supervisor Luce at the time that he was not feeling well and needed to seek medical attention, and that this exchange happened in front of numerous witnesses. Luce expressed the view that Plaintiff had left the worksite because he was disgruntled over the overtime pay issue. Plaintiff pointed out that every security officer in the September 7, 2017 meeting was unhappy about the company's failure to pay overtime, as well as the reduction in pay rate for the off-shift, on-site hours, but that Plaintiff had

left to seek medical treatment. Plaintiff then handed Kluick a copy of his doctor's excuse. Kluick, Luce and Kohut reviewed the document, and then asked Plaintiff to step outside the room. After a few minutes, Plaintiff was brought back into the room, and Kluick informed Plaintiff that management believed that Plaintiff had left because he was upset about the overtime pay issue, and that accordingly Plaintiff was being terminated.

29.     Immediately prior to the 11:00 a.m. meeting on September 18, 2017 with Plaintiff, Mr. Kluick, Mr. Luce and Mr. Kohut had met with two security officers who had been caught on camera stealing client property. On information and belief, those two officers are still working for Defendant on a probationary status.

30.     Defendant subsequently advised Plaintiff's co-workers via email that the off-shift, on-site hours worked during Hurricane Harvey would be paid at $24.00 per hour rather than the $15.00 per hour that was actually paid to them on September 7, 2017. Plaintiff received a check from Defendant in an envelope postmarked September 22, 2017 for an amount between $300.00 and $400.00. On information and belief, this amount represented Defendant's payment to Plaintiff of the $9.00 per hour differential between the $15.00 per hour paid for the off-shift, on-site hours worked at the LNG Terminal during Hurricane Harvey and Plaintiff's straight time rate of $24.00 per hour, after state and federal deductions. To date, Plaintiff and his former co-workers have not received payment for their overtime hours worked at the half-time premium required by the FLSA.

31.     As a result of Defendant's retaliatory termination, Plaintiff was unemployed from September 8, 2017 through mid-October 2017. He was denied unemployment benefits because Defendant falsely reported to the Texas Workforce Commission that Plaintiff was fired for cause. Plaintiff secured work in mid-October 2017, but his new hourly rate is $14.00 per hour, $10.00 per hour less than he was previously making as an employee of Defendant.

## VI.    COLLECTIVE ACTION ALLEGATIONS

32.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

33.    Plaintiff has actual knowledge that Class Members have been denied overtime pay for hours worked over forty hours per workweek.

34.    Other employees similarly situated to Plaintiff work or have worked for Defendant as security officers and were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

35.    Although Defendant permitted and/or required the Class Members to work in excess of forty hours per workweek, Defendant has not paid them for such hours at the rate required by the FLSA.

36.    Class Members perform or have performed the same or similar work as that performed by Plaintiff.

37.    Class Members have worked for Defendant in excess of forty hours during a workweek.

38.    Class Members are not exempt from receiving overtime pay under the FLSA.

39.    Class Members are similar to Plaintiff in terms of their job duties, pay structure, and denial of overtime pay.

40.    Defendant's failure to pay overtime compensation required by the FLSA results from its generally applicable policies or practices, and does not depend on the personal circumstances of Class Members.

41.    The experience of Plaintiff with respect to denial of overtime pay is typical of the experiences of the Class Members.

42.     The specific job titles or precise job responsibilities of each Class Member do not prevent collective treatment.

43.     All Class Members, without regard to their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

44.     Although the exact amount of damages may vary among Class Members, the violation appears on the face of Defendant's records and can be calculated easily by reference to hours worked. The claims of all Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all Class Members.

45.     Accordingly, the class of similarly situated Plaintiffs is properly defined as follows:

**All of Defendant's current and former security officers who worked more than forty (40) hours in a workweek but were not paid one and one-half times their regular rate of pay at any time starting three years before the Original Complaint was filed up to the present.**

VII.    CAUSES OF ACTION

A. VIOLATION OF 29 U.S.C. § 207

46.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

47.     Defendant's practice of failing to pay Plaintiff and Class members at a time-and-one-half rate for hours worked in excess of forty (40) per workweek violated the FLSA.  29 U.S.C. § 207.

48.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which their employees are employed is applicable to Defendant or to Plaintiff or to Class Members.

49.     Defendant's method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA.

## B. VIOLATION OF 29 U.S.C. § 215(a)(3) — RETALIATION

50.     Plaintiff incorporates all allegations contained in the foregoing paragraphs. However, this claim is brought on an individual basis only.

51.     Plaintiff's participation in the September 7, 2017 meeting with Defendant's supervisor Kenneth Luce to complain of unpaid wages and overtime compensation constituted protected activity under the anti-retaliation provisions of the FLSA, because such communication was both the protected act of initiating a claim and the necessary precursor to the protected act of filing a claim.  See generally, Hagan v. Echostar Satellite, L.L.C. et al., 529 F.3d 617, 625-26 (5th Cir. 2008); Dearmon v. Tex. Migrant Council, Inc., 252 F. Supp.2d 367, 367-68 (S.D.Tex. 2003); see also 29 U.S.C. § 215 (a)(3).  Defendant's termination of Plaintiff's employment on the pretext that he left his post without permission due to irritation over the failure to pay overtime, notwithstanding evidence of the medical condition, permission to leave granted by a supervisor, and the existence of a roomful of witnesses corroborating Plaintiff's version of events, constituted unlawful retaliation prohibited by the FLSA.

52.     As a result of the retaliatory termination, Plaintiff lost his income of $24.00 per hour. He was without income from September 7, 2017 through mid-October 2017, and his income was reduced by $10.00 per hour from its former level once he secured new employment in mid-October 2017. In addition, the illegal and unwarranted job termination and resulting loss of earnings has caused Plaintiff considerable mental anguish and emotional distress.

## VIII.   DAMAGES SOUGHT

53.     Plaintiff and Class Members are entitled to recover their unpaid overtime compensation.

54.    Plaintiff and Class Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

55.    Plaintiff and Class Members are also entitled to recover their attorney's fees and costs as provided for by the FLSA. 29 U.S.C. § 216(b).

56.    Plaintiff, in his individual capacity, is entitled to recover the wages he would have received absent Defendant's illegal and retaliatory termination. 29 U.S.C. § 216(b).

57.    Plaintiff, in his individual capacity, is entitled to recover an amount equal to all of the wages lost as a result of Defendant's illegal and retaliatory termination as liquidated damages. 29 U.S.C. § 216(b).

58.    Plaintiff, in his individual capacity, is entitled to recover damages for his emotional injuries suffered as a result of Defendant's illegal and retaliatory termination. *See Pineda v. JTCH Apts., L.L.C.*, 843 F.3d 1062, 1066 (5th Cir. 2017).

## IX.    PRAYER

For the foregoing reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a.    Overtime compensation for all hours worked by Plaintiff and Class Members over forty in a workweek at the applicable time-and-one-half rate;

b.    An equal amount to the foregoing as liquidated damages provided for by the FLSA;

c.    Reasonable attorney's fees, costs and expenses of this action as provided for by the FLSA;

d.    In his individual capacity, Plaintiff's wages lost as a result of Defendant's illegal and retaliatory termination of his employment;

e.    In his individual capacity, an amount equal to the wages Plaintiff lost as a result of Defendant's illegal and retaliatory termination of his employment as liquidated damages;

f.      In his individual capacity, damages for Plaintiff's emotional injuries suffered as a result of Defendant's illegal and retaliatory termination of his employment; and

g.      Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

Respectfully submitted,

_____/s/ Alex Mabry_____
Alex Mabry
Texas Bar No. 00792043
**THE MABRY LAW FIRM, PLLC**
10320 Sommerville Avenue
Houston, Texas 77041
Telephone: (832) 350-8335
Facsimile: (832) 831-2460
amabry@mabrylaw.com
**ATTORNEY-IN-CHARGE
FOR PLAINTIFF DARIN BORNE
AND CLASS MEMBERS**