IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DARIN BORNE, Individually and on Behalf of All Others Similarly Situated, | § | |
| | § | |
| Plaintiff, | § | |
| v | § | Civil Action No. 1:17-cv-00510-MAC |
| | § | |
| AAY SECURITY, LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO DECERTIFY COLLECTIVE ACTION**

Defendant AAY Security, LLC ("AAY") now moves, by way of this Defendant's Motion to Decertify Collective Action (the "Motion"), for the Court to dissolve the conditionally certified Training and Hurricane Classes. In support of this Motion, AAY respectfully shows the Court as follows:

## I. THE CLASSES SHOULD BE DECERTIFIED

This Court should decertify the Training and Hurricane Classes that it provisionally certified based upon the discovery conducted to date. Plaintiffs cannot meet the more rigorous standard necessary for maintaining certification. In addition, the Court relied on false and misleading statements in granting conditional status.

### A. Legal Standard

This Court has already recognized the two-step process set forth in *Lusardi* as applicable to the case at hand. *See* Order [D.E. 30 at 5]. The first phase was the "notice stage" and the second phase is the "decertification stage." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). "The second phase of the analysis is ordinarily precipitated by a motion for decertification by the

defendant, filed after discovery is largely complete." *Johnson v. RGIS Inventory Specialists*, 1:05-CV-389, 2007 WL 9724161, at *3 (E.D. Tex. Mar. 26, 2007) (Crone, J.).

In the decertification stage, "the court must make a factual determination as to whether there are similarly-situated employees who have opted in." *Portillo v. Permanent Workers, L.L.C.*, 662 Fed. Appx. 277, 281 (5th Cir. 2016) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008)). "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the 'similarly situated' analysis." *Mooney*, 54 F.3d at 1213. These factors include: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* (quoting *Mooney*, 54 F.3d at 1213) (alterations original). This is an *ad hoc* analysis used on a case-by-case basis. *Mooney*, 54 F.3d at 1213.

"Unlike the notice stage, 'the scrutiny applied in the second stage is much more rigorous,' and '[f]inal certification is rarely granted.'" *Johnson*, 2007 WL 9724161, at *3 (quoting *Gallender v. Empire Fire & Marine Ins. Co.*, Civ. A. No. 5:05-CV-220, 2007 WL 325792, at *2 (S.D. Miss. Jan. 31, 2007)) (alterations original). "[W]hen a court declines to certify a proposed collective action, it 'must dismiss the opt-in employees, leaving only the named plaintiff's original claims.'" *Portillo v. Permanent Workers, L.L.C.*, 662 Fed. Appx. 277, 281 (5th Cir. 2016).

**B. Disparate Factual and Employment Settings**

"In assessing the factual and employment settings of the plaintiffs, courts have considered a variety of factors, including the plaintiffs' job titles, job duties, and compensation, the geographic location involved, and whether the plaintiffs worked for the same decision-

maker." *Johnson*, 2007 WL 9724161, at *3. Although courts have enumerated several factors, this list is not exhaustive. *See Mooney*, 54 F.3d at 1213 n.7.

Opt-in Plaintiffs were not paid at the same rate and did not all share the same title, even though many of the opt-in plaintiffs share similar duties and a geographic location. Borne testified that he was paid $24 an hour. Ex. 1 at 10. Margaret Ellison ("Ellison") testified she was paid $24 an hour. Ex. 2 at 29. On the other hand, Elias Ibarra testified that he was paid $22 an hour. Ex. 3 at 48. AAY pay records produced in this lawsuit reveal that Kenneth Luce ("Luce") was paid $26. Ex. 4. It should be noted that Luce was a shift supervisor, and not a security guard. Ex. 1 at 11.

**C. Various Defenses**

Under this element, a court considers the numerosity of defenses and the individual nature of each defense asserted. *Johnson*, 2007 WL 9724161, at *3. AAY will likely rely on similar defenses for each opt-in plaintiff.

**D. Fairness and Procedural Considerations**

When weighing the fairness and procedural considerations, a court contemplates "whether it can analyze the opt-in class with a 'broad scale approach." *Johnson*, 2007 WL 9724161, at *5 (internal quotes omitted). Under this prong, "the primary objectives of the FLSA § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Id.*

**1. Plaintiff has diminished the pooling of resources by opt-in plaintiffs.**

Contrary to Plaintiff's assertions in several pleadings, Plaintiff has withdrawn Plaintiff's expert witness and no report has ever been produced. As a result, any efficiency gained by

maintaining the opt-in classes has been greatly diminished. *See id.* On the deadline for designating experts, Plaintiff provided amended disclosures identifying an expert regarding the calculation of damages, but Plaintiff failed to provide a report. *See* Mot. Strike [D.E. 31 at 1]. As a result, AAY moved to strike Plaintiff's expert. *See id.* In Plaintiff's Response in Opposition to Defendant's Motion to Strike Expert Witness ("Response"), Plaintiff stated:

> If Mr. Breshears were to be struck as an expert witness, the net result would be that the undersigned and his staff would have to have to work with records for hundreds of pay periods for class members, and *necessarily would do so less efficiently than an expert in the field.*

[D.E. 37 at 3-4] (emphasis added). In the Response, Plaintiff went on to make it clear that if certification were granted, an expert would provide efficiency and allow pooling of resources: "*Plaintiff's expert's testimony is important because it will bring efficiency* and expertise to the determination of class damages at a lower cost than would be incurred if Plaintiff's counsel were forced to fill that role[.]" *Id.* [D.E. 37 at 8] (emphasis added).

However, in Plaintiff's latest disclosures, Plaintiff changed his position. *See* Ex. 5. Plaintiff withdrew the damages expert, Mr. Breshears. *See id* at 59. When AAY requested Mr. Breshears' deposition, Plaintiff's counsel confirmed he was withdrawn as a witness. *See* Ex. 6. Additionally, no report was ever produced. As a result, the goal of allowing opt-in plaintiffs to pool resources was forfeit in light of the withdrawn expert. *See Johnson*, 2007 WL 9724161, at *5. Apparently, each opt-in plaintiff will testify on their respective alleged damages. Therefore, decertification is appropriate.

**2. Training Class members were previously tendered payment.**

"*Hoffmann-La Roche* strictly forbids district courts from appearing to endorse the merits of the litigation by means of facilitating notice, . . . a merits-based issue . . . must not be addressed until the decertification stage." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th

Cir. 2019). In its Memorandum and Order granting conditional certification, this Court stated "[w]hether the potential plaintiffs are qualified to join a lawsuit for liquidated damages is a merits issue that should be raised at the decertification stage." [D.E. 30 at 9]. AAY now asks the Court to consider this merits issue.

Originally, Plaintiff sought liquidated damages that Plaintiffs' claims were *found* and *ordered* by the Department of Labor ("DOL"). *See* 3d Am. Compl. [D.E. 17 at 1, 10]. In Plaintiff's Motion to Conditionally Certify Collective Action and to Authorize Notice (the "Motion to Certify"), Plaintiff attempted to pivot the Training Class cause of action in the Third Amended Complaint into a different cause of action. *See* Pl.'s Appx. [D.E. 26].

The Third Amended Complaint states:

> Defendant failed and refused to pay its security officers *liquidated damages ordered to be paid by the Wage and Hour Division of United States Department of Labor* in connection with certain training hours worked by Defendants' security officers between August 7, 2016 and February 9, 2017.

3d Am. Compl. [D.E. 17 at 1] (emphasis added). The Third Amended Complaint further states:

> All of Defendant's current and former security officers *found to be owed overtime liquidated damages by the Wage and Hour Division of the United States Department of Labor* in its investigation identified as Case ID No. 1813611.

*Id.* [D.E. 17 at 10] (emphasis added).

Plaintiff has failed to produce any *order* from the DOL, let alone the order described in the Complaint, requiring that AAY pay liquidated damages. Furthermore, Plaintiff has failed to produce any *finding* by the DOL requiring such a payment. Plaintiff, ostensibly realizing this error, tried to recast the Training Class in the Motion to Certify as seeking liquidated damages on behalf of employees under the FLSA, instead of what was allegedly already *found* and *ordered* by the DOL. *See* Mot. Certify [D.E. 23 at 4-5, 10].

On this basis alone, the Training Class cannot exist. As this Court has already observed, Plaintiff has conceded that AAY already tendered payment to its employees. [D.E. 30 at 8-9]. Because AAY tendered the amount found by the DOL to its employees, and the DOL never issued a *finding* or an *order* that liquidated damages were due, this class should be decertified.

Additionally, Plaintiff produced and attempted to rely upon an unauthenticated, conflicting report, purportedly from the DOL. *See* Pl.'s Reply [D.E. 29 at 2]. This report cannot be considered because it contains conflicting hearsay and is unauthenticated. *See* Fed. R. Evid. 802, 901. Although, Plaintiff's counsel provided a declaration with the report, this declaration cannot, and does not, address the hearsay contained in the document. *See* Pl.'s Appx. [D.E. 26 at 3]. Furthermore, Plaintiff's counsel fails to authenticate this document. *See id.*

Even if Plaintiff could surmount these two hurdles, the report is insufficient to withstand Plaintiff's more rigorous burden. *See Johnson*, 2007 WL 9724161, at *3. On the face of the report, it is clear that no Wage and Hour investigator signed the report. *See* Pl.'s Appx. [D.E. 26 at 13]. Additionally, the report reflects on its face that no liquidated damages are to be awarded:

**WHISARD Compliance Action Report**

**FLSA**

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *Failure to pay proper overtime / Agree to Comply* | 50 | 50 | $6,334.08 | $0.00 | $0.00 | $0.00 | |
| *Failure to keep accurate records / Agree to Comply* | 1 | 0 | $0.00 | $0.00 | $0.00 | $0.00 | |
| *FLSA Totals:* | 50 | 50 | $6,334.08 | $0.00 | $0.00 | $0.00 | |
| *Total Violations Under FLSA:* | | 51 | | | | | $0.00 |

** CMPs computed do not necessarily indicate CMPs assessed*

| | | | |
|---|---|---|---|
| Unduplicated Employees Found: | 50 | Unduplicated Employees Agreed: | 0 |
| Total Amount BWs Computed: | $6,334.08 | Total Amount BWs Agreed: | $0.00 |
| Total Amount LDs Computed: | $0.00 | Total Amount LDs Agreed: | $0.00 |

*Id.* Plaintiff tries to rely on a separate section of the report for the proposition that AAY was ordered to pay liquidated damages. Pl.'s Reply [D.E. 29 at 2]. It should be noted that the unsigned portion of the report Plaintiff relies upon is dated August 1, 2017. *See* Pl.'s Appx. [D.E.

26 at 13]. AAY has produced a letter that conclusively disposes of Plaintiff's assertion that the DOL ordered liquidated damages. DOL Letter [D.E. 28-1]. The DOL letter[1] states:

> We would like to direct your attention to Section 16(e) of the FLSA and Regulations, Part 578. As you will note, Section 16(e) provides for the assessment of a civil money penalty for any repeated and/or willful violations of Section 6 or 7. No penalty is being assessed as a result of this investigation. If at any time in the future your firm is found to have violated the monetary provisions of the FLSA, it will be subject to such penalties.

*Id.* As the Court can clearly see, the DOL, in a subsequent, signed letter, made it clear that no penalties, including liquidated damages, were assessed as a result of its investigation. *See id.*

On this basis, the Training Class cannot exist—no liquidated damages were assessed by the DOL and the referenced overtime pay has already been tendered and received. As a result, conditional certification should be withdrawn, and the Training Class opt-in plaintiffs should be dismissed from the case.

**3. The Hurricane and Training Classes have no damages calculations.**

The Hurricane Class and the Training Class should be decertified because there is no calculation of damages for either class, no report has ever been produced regarding damages, and neither the lead Plaintiff nor any other opt-in plaintiff has been able to testify regarding the method of calculation and amount of their damages. Under the FLSA, the opt-in plaintiffs must prove by a preponderance of evidence "the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). As previously discussed, Plaintiff withdrew the expert for the training class and has taken the position that the expert's "skill set will not be needed with respect to the hurricane class damages." Ex. 6.

In the Response, Plaintiff committed to producing a report:

[1] The letter indicates it was sent on January 25, 2017; however, it was actually sent by the DOL in 2018. Once AAY learned no liquidated damages were to be assessed, it issued checks for the back wages to each of the affected individuals.

> Had class certification been denied, Plaintiff would have relied on Defendant's records, Defendant's witnesses, and his own testimony in order to establish his damages. Given that a class was certified—and once Defendant honors its verbal commitment and procedural obligation to respond to discovery—*Mr. Breshears will produce a report opining on damages for the entire class.*

*Id.* [D.E. 37 at 87-8] (emphasis added). In Plaintiff's Motion for Protective Order and Representative Discovery ("Motion for Protection"), Plaintiff represented that an expert would be providing damage calculations:

> Once liability is established as a legal matter on a class-wide basis, then the Lead Plaintiff will present evidence as to class damages, and he will do so based upon Defendant's records and *Plaintiff's damages expert's evaluation of same.*

[D.E. 51 at 14] (emphasis added).

Instead, Plaintiff then designated each opt-in plaintiff as a person with knowledge of their own damages. *See* Ex. 5 at 52-56. These designations are confusing for two reasons: (i) Plaintiff filed the Motion for Protection in an effort to prevent AAY from obtaining discovery from the opt-in plaintiffs, thus keeping AAY from collecting discovery from the *very witnesses* that Plaintiff alleges to have knowledge of the facts in this case, including their respective damages; and (ii) AAY has deposed several opt-in plaintiffs, and none of them were able to provide any testimony regarding the calculation method and amount of damages they seek.

For example, when lead plaintiff Borne was deposed, he could not recall reviewing the documentation associated with his pay or any calculation of damages:

> Question: Now, you state that "The training time pay rate may have changed after the Wage and Hour investigation in 2017, but I'm not certain about that because AAY still has not provided me with my pay records that have been requested by my counsel in this lawsuit." Did I read that correctly?
>
> Answer: Yes, sir.
>
> Question: Have you looked at those pay records for any purpose since they were produced in this case?

MR. MABRY: Objection. Form.

Answer: I don't remember.

Question: You don't have any recollection of ever looking at the pay records that -- for your pay that AAY produced in this lawsuit?

Answer: I don't recall.

Question: Do you know what the pay records reflect with respect to the payment for training time?

MR. MABRY: Objection. Form.

Answer: I don't remember.

Question: Well, sir, are you saying you don't remember because you've looked at them and you don't recall what they reflect, or you don't remember ever looking at them?

Answer: I don't recall what they reflect or looking at them.

Ex. 1 at 17-18. After Borne admitted he had no memory of reviewing payroll documents relevant to his claims, he further admitted that he cannot recall the damages he seeks for the training class:

Question: Can you identify the actual amount as we sit here today that you allege that you're owed for training time as a member of the training class in relation to the amount that you were actually paid?

MR. MABRY: Objection. Form.

Answer: I don't recall.

*Id.* at 20-21.

Regarding the Hurricane Class, Borne complains that he was not properly paid for the hours he worked:

Question: And what amount of damages are you seeking from AAY in this lawsuit as a member of the hurricane class?

Answer: Money that they owe me for the overtime pay at the time and a half rate.

Question: Yes, sir. What is that amount?

Answer: It's for 36 hours overtime at $24 an hour.

Question: So, what does that come out to?

MR. MABRY: Objection. Form.

Question: Have you ever actually calculated it and come up with a number before today?

MR. MABRY: You're not to get into any conversation that you've had with me.

Answer: I don't recall.

Question: But it's your understanding that the damages for the hurricane class would be 36 hours of your standby time times the $24 an hour rate?

Answer: Plus penalties.

Question: What penalties?

MR. MABRY: Objection. Form.

Answer: Penalties assessed for not paying the overtime rate.

*Id.* at 15-16. Borne later admitted, however, that he *was* paid twenty-four dollars an hour for thirty-six hours, but he refused to cash the check:

Question: It goes on in paragraph 28 to state that "*AAY subsequently advised your co-workers via email that the off-shift, on-site hours worked during Hurricane Harvey would be paid at $24 per hour rather than $15 per hour that was actually paid to them on September 7.*" It goes on to state that you received a check from AAY in an envelope postmarked September 22, 2017, for an amount between $300 and $400 and that you believe this amount represented the payment of the 9-dollar per hour differential between the 15 dollar per hour paid for the off-shift, on-site hours and the straight time rate of $24 per hour. So, you did receive a check for the difference between the standby rate and the full rate that Cheniere agreed to pay?

Answer: I don't know what the check was for.

Question: It didn't come with any explanation at all?

Answer: I don't recall.

Question: Did you cash that check?

Answer: No, sir.

Question: Why not?

Answer: Because I didn't cash it. I didn't know what it was for.

Question: Did you call anyone at AAY and ask what it was for?

Answer: No, sir, I didn't.

Question: Why not?

Answer: Because I didn't call.

Question: I'm sorry.

Answer: I didn't call them.

Question: Why not?

Answer: I just felt like I didn't need to.

Question: You've got a check for something between $300 to $400. You're not even going to call them and ask what it's for so that you'd feel comfortable cashing it?

Answer: No, sir.

MR. MABRY: Objection. Form.

Question: Why not?

Answer: Because –

MR. MABRY: Objection. Form.

Answer: *I didn't call because I didn't feel like I needed to cash it.*

*Id.* at 12-14 (emphasis added).

Borne went on to admit that he never calculated the damages of his fellow opt-in plaintiffs, even though he is designated as lead plaintiff for this purpose in this lawsuit:

> Question: And have you calculated the damages that are owed your co-workers for that time?
>
> Answer: I believe we all had the same amount of time. I don't -- I don't recall what it was.
>
> Question: Yes, sir. My question was, have you personally calculated the amount of time that your co-workers were due as you allege in this affidavit?
>
> Answer: No, sir.

*Id.* at 19.

Similarly, Margaret Ellison admitted that she does not know her damages even though she has possession of her payroll documents:

> Question: Now, sometime ago AAY did provide your counsel pay records. Have you had an opportunity to review those?
>
> Answer: No, sir.

Ex. 2 at 30-31.

> Answer: I made it a practice to print out my paystubs. I made it a practice to print out all pertinent emails so that I would have a record of dates and times that we were scheduled for training and so I would have those and I had them in my personal binder.

*Id.* at 32.

During her interrogation, she repeatedly refused to answer questions about her alleged damages as the following exchange reflects:

> Question: What is the amount of damages you're seeking as a member of the hurricane ride-out class?
>
> Answer: What AAY owes me.
>
> Question: And what would that amount be?
>
> Answer: That's in AAY documentation.
>
> Question: Okay. Meaning what, that you've calculated the amount of lost overtime you're claiming and provided it to AAY?

MR. MABRY: Objection. Form.

Answer: AAY has it in all their payroll documentation.

Question: Has what, ma'am, your personal calculations of the overtime that you've claimed to have lost?

. . . .

Answer: They did not pay us what they owed us.

Question: *And for you personally, what is the amount of damages you're claiming as lost overtime as a claimed member of the hurricane class?*

Answer: *I don't have the exact numbers.*

Question: *For your damages?*

Answer: *For my damages.*

Question: *For either the training class or the hurricane class?*

Answer: *Correct.*

. . .

Question: *Yes, ma'am, but have you personally sat down and calculated your damages for either class?*

Answer: *No, sir.*

Question: *Is that why you can't tell me what they are today?*

Answer: *Correct.*

*Id.* at 36-39 (emphasis added). Her inability to answer questions regarding her damages can be found throughout her deposition. *See id.* at pgs. 33, 34, 35-36.

Both Borne's and Ellison's depositions highlight the need for decertification of the Training and Hurricane Classes. After their failure to produce an expert report on damages and their ultimate withdrawal of the damages expert, neither the lead plaintiff nor any of the opt-in plaintiffs have been able to calculate or identify the damages amount claimed by any of them.

### 3. The Court relied, in part, on false statements.[2]

Several declarations were included as evidence with Plaintiff's Motion to Conditionally Certify Collective Action and to Authorize Notice. *See* Pl.'s Appx. [D.E. 26]. Specifically, Borne and former opt-in plaintiff John Johnson both provided sworn declarations. *See id.* [D.E. 26 at 14-15, 23-27]. The Court relied, in part, on both of these declarations in its determination to conditionally certify the two classes. *See* Order [D.E. 30 at 8, 10-11] (referring to the Borne Declaration and concluding "that Borne has satisfied the 'fairly lenient standard' for conditional certification of the proposed classes.").

As has been detailed in Defendant's Motion for Sanctions, as evidenced by the deposition testimony of Borne's healthcare providers and his relevant medical records, Borne's Declaration contains material false statements that were entirely inappropriate for submission to this Court in support of the conditional certification motion. *See* Mot. Sanctions [D.E. 56 at 12-15]. Similarly, once Plaintiff no longer required opt-in plaintiff Johnson's testimony to secure conditional class certification, Johnson's consent to participate in this case was withdrawn. *See id.* [D.E. 56 at 13-14]. Defendant's detailed recitation of facts and law regarding the improper submission of the Borne and Johnson Declarations as support for the certification request is set forth in its Motion for Sanctions, which is incorporated herein by reference. *See id.* Decertification in light of the fact that the request for certification was itself premised upon false Declarations is now appropriate.

---

[2] Additional facts regarding these false statements can be found in Defendant's Motion to for Sanctions [D.E. 56].

## PRAYER FOR RELIEF

**WHEREFORE,** Defendant AAY Security, LLC prays this Court will decertify the Training and Hurricane Classes and dismiss the opt-in employees, leaving only Plaintiff Darin Borne's original claims, and for all other relief to which said Defendant is entitled.

Respectfully submitted,

By:__________________________

James W. Walker
Attorney in Charge
State of Texas Bar No. 20709600
**COLE SCHOTZ P.C.**
2515 McKinney Avenue, Suite 1350
Dallas, TX 75201
Telephone: (469) 557-9391
Facsimile: (469) 533-0361
Email: jwalker@coleschotz.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATION OF SERVICE

I hereby certify that on June 7, 2019 Defendant's Motion to Decertify Collective Action was served upon the following through the CM/ECF system:

Alex Mabry, Esq.
The Mabry Law Firm, LLC
10320 Sommerville Avenue
Houston, Texas 77041
Telephone (832) 350-8335
Facsimile (832) 831-2460
Email: amabry@mabrylaw.com
**Attorneys for Plaintiff**

By:__________________________
James W. Walker

## CERTIFICATE OF CONFERENCE

I hereby certify that the meet and confer requirement in LOCAL RULE CV-7(h)-(i) has been complied with and Defendant's Motion to Decertify Collective Action is opposed. Lead Counsel for Plaintiff and Defendant conferred on May 28, 2019. The undersigned counsel identified the separate bases upon which the motion to decertify relies. An agreement could not be reached because Mr. Mabry opposes decertification and disagrees with the various reasons provided during this conference. As a result, the discussion has conclusively resulted in an impasse, leaving an open issue for the Court to resolve.

By:__________________________
James W. Walker