**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| DARIN BORNE, Individually and on | § | |
| Behalf of All Others Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:17-CV-510 |
| | § | |
| AAY SECURITY LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant AAY Security LLC's ("AAY") Motion for Summary Judgement [*sic*] (#64), wherein AAY requests that the court grant summary judgment as to all of the claims brought by Plaintiff Darin Borne ("Borne"), individually and on behalf of all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Having considered the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the motion should be granted in part and denied in part.

## I.     Background

AAY is a company that provides trained professional security officers to maritime, petrochemical, and refinery facilities in the United States. Borne alleges that AAY required employees (the "Training Class") to attend pre-shift training meetings and to take periodic drug tests between August 7, 2016, and February 5, 2017. Borne also contends that, between August 28, 2017, and September 1, 2017, after Hurricane Harvey, AAY required employees (the "Hurricane Class") to remain on-site, even when they were off duty, while AAY provided

around-the-clock security at Cheniere Energy, Inc.'s Sabine Pass Liquid Natural Gas facility in Cameron, Louisiana (the "Cheniere Site"). Borne maintains that members of the Training Class and the Hurricane Class (collectively, "Plaintiffs") were entitled to overtime pay for time in excess of 40 hours per week when they were purportedly working for AAY. In his Third Amended Complaint, Borne defines these two classes as follows:

> (1)  All of [AAY]'s current and former security officers found to be owed overtime liquidated damages by the Wage and Hour Division of the United States Department of Labor [("DOL")] in its investigation identified as Case ID No. 1813611.
>
> (2)  All of [AAY]'s current and former security officers who worked more than forty (40) hours during the week of Monday, August 28, 2017[,] and who were not paid one and one-half times their regular rate of pay for their overtime hours worked in that week.

Borne also asserts that AAY terminated his employment in retaliation for complaining about not receiving overtime pay. AAY maintains that Borne was terminated for abandoning his post. During the pendency of this case, the court granted Borne's request for conditional certification and later denied AAY's request to decertify the Training Class and the Hurricane Class. There are currently twelve plaintiffs who have opted into the Training Class and eight plaintiffs who have opted into the Hurricane Class.[1]

In the motion pending before the court, AAY argues that summary judgment should be granted because: (1) AAY's affirmative defense of good faith precludes the Training Class from recovering liquidated damages; (2) the Hurricane Class cannot establish their damages or,

---

[1] The Training Class members are Borne, Margaret Ellison, Kenneth Ford, Gerald Fraiser, Jorge Gonzales, Anthony Grantham, Elias Ibarra, Jerry Lubin, Cory Luckette, Casey Meehl, Brice Taylor, Robert Truax, and Brenda Walker. The Hurricane Class members are Borne, Margaret Ellison, Paul Ferris, Michael Havis, Elias Ibarra, Kenneth Luce, Cory Luckette, Casey Meehl, and Robert Truax.

alternatively, the Hurricane Class employees were waiting to be engaged during their time off duty; and (3) Borne's termination for abandoning his post was not retaliatory.

II.    Analysis

A.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mabry v. Lee Cty.*, 849 F.3d 232, 234 (5th Cir. 2017); *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2804 (2015); *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012). To warrant judgment in its favor, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)); *accord Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), *cert. denied*, 568 U.S. 1194 (2013).

"A fact issue is material if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016); *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014); *accord Poole v. City of*

*Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 334 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren*, 820 F.3d at 771 (quoting *Anderson*, 477 U.S. at 248); *Tiblier*, 743 F.3d at 1007; *accord Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013). The moving party, however, "need[s] not negate the elements of the nonmovant's case." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). The court "should review the record as a whole." *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). The evidence is construed "in favor of the nonmoving party, but only where there is an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux*, 402 F.3d at 540).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992), *cert. denied*, 523 U.S. 1094 (1998)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) (quoting *Eastman Kodak Co.*, 504 U.S. at 468-69); *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill*, 805 F.3d at 538 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Tiblier*, 743 F.3d at 1007; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). "Where the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). In such a

situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir.) (quoting *Celotex Corp.*, 477 U.S. at 322-23), *cert. denied*, 555 U.S. 1012 (2008).

B.      Fair Labor Standards Act ("FLSA")

The FLSA, enacted in 1938, was designed to ensure that employees would receive "a fair day's pay for a fair day's work" and protect them from being overworked and underpaid. *Barrentine v. Ark.-Best Freight Sys., Inc.* (*"Barrentine I"*), 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 CONG. REC. 4983 (1937) (message of President Roosevelt))); *see Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 225 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1552 (2018); *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). Accordingly, the FLSA establishes "a minimum wage, regulations governing maximum hours, record-keeping and reporting requirements, provisions regulating child labor, and civil and criminal penalties for violation of any of its terms." *Lee v. Veolia ES Indus. Servs., Inc.*, No. 1:12-CV-136, 2013 WL 2298216, at *10 (E.D. Tex. May 23, 2013).

"Under the FLSA, any employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is 'liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 n.3 (5th Cir.) (quoting 29 U.S.C.

§ 216(b)), *cert. denied*, 568 U.S. 1069 (2012); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012); *see Bridges*, 875 F.3d at 225.

"The FLSA requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half times their 'regular rate' of pay." *York v. City of Wichita Falls*, 48 F.3d 919, 921 (5th Cir. 1995) (citing 29 U.S.C. § 207(a)(1)); *see Bridges*, 875 F.3d at 225; *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 382 n.7 (5th Cir. 2013). The "regular rate" must include "all remuneration for employment paid to, or on behalf of, the employee," with certain exceptions. 29 U.S.C. § 207(e). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)).

1.    <u>Good Faith Defense</u>

AAY asserts that it is not liable for liquidated damages because it acted in good faith. The FLSA provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. In addition to unpaid overtime compensation and an equal amount of liquidated damages, the court may allow recovery of reasonable attorney's fees and costs of the FLSA action. *Id.* § 216(b). In order to establish a good faith defense to avoid an award of liquidated damages,

"[a]n employer found liable under section 206 or section 207 has the 'substantial burden' of proving to the satisfaction of the trial court that its acts giving rise to the suit are both in good faith and reasonable." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990), *abrogated on other grounds by Integrity Staffing Sols., Inc. v. Busk*, ___U.S. ___, 135 S. Ct. 513, 519 (2014)). "[G]ood faith requires a 'duty to investigate potential liability under the FLSA' and that ignorance cannot be the basis of a reasonable belief." *Steele*, 826 F.3d at 246 (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)). An employer does not act in good faith when it "suspect[s] that [it is] out of compliance with the FLSA." *Id.* (quoting *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)); *Harvill*, 433 F.3d at 441. Whether the evidence supports good faith and reasonableness is a discretionary determination by the court. *Steele*, 826 F.3d at 246 (citing *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 357 (5th Cir. 1990)).

In a letter to AAY dated December 21, 2016, AAY employees requested overtime pay for their time in mandatory training to complete certain licensing requirements and for drug screenings required by AAY. AAY contends that it did not become aware of a potential FLSA violation prior to receiving the letter, after which it promptly retained Don Strobel ("Strobel"), a former Wage and Hour Assistant District Director for the DOL, to evaluate AAY's obligations under the FLSA. Borne contends that ignorance of FLSA requirements between January 2016 and December 2016 cannot be the basis of reasonable belief to establish a defense of good faith. Although good faith requires some duty to investigate potential liability under the FLSA, AAY's corporate representative Yolanda Kohut ("Kohut") testified that AAY never had issues or complaints prior to receiving the letter. Thus, the record indicates that AAY acted in good faith before December

2016 because it had no reason to suspect that it was out of compliance with the FLSA until it received the letter from its employees.

AAY maintains that it also acted in good faith after December 2016 because it relied on Strobel's assessment of its overtime pay obligations. Strobel, in turn, prepared a report relying on federal law and DOL opinion letters in which he concluded that AAY was properly compensating its employees for training time. AAY asserts that it obtained the results of Strobel's investigation no later than February 2017. AAY further argues that it manifested other indicia of good faith and reasonable grounds because it initiated the investigation, advised the affected employees of the investigation, and promptly published Strobel's report to the affected employees. In addition, AAY claims that it fully complied with the DOL's investigation and tendered payment of the identified compensation to the affected employees. The DOL later concluded that AAY did not violate the FLSA with regard to training time pay.

On the other hand, there is no indication that AAY investigated the overtime compensability of the mandatory drug screenings even though its employees raised the issue in December 2016. Kohut testified that AAY believed the drug testing time was not compensable because it was secondary to the employees' security work. Kohut admitted that the $6,446.08 in liquidated damages ultimately assessed by the DOL was related to the drug testing time. Kohut also asserted, however, that after the DOL investigation determined that the drug testing time was compensable, AAY amended its practices to include the drug testing time in its overtime calculations and paid the affected employees accordingly. Nevertheless, because AAY failed to investigate the compensability of drug testing time prior to receiving the results from the DOL investigation, AAY fails to establish that it acted in good faith when it omitted drug testing time

from its overtime pay calculations. Accordingly, AAY's motion for summary judgment is denied as to the Training Class's recovery of liquidated damages.[2]

2.     <u>Amount of Overtime Compensation Due</u>

To prevail in an FLSA action for unpaid overtime, the claimant must show by a preponderance of the evidence: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). AAY disputes only the Hurricane Class's ability to establish the fourth element, the amount of compensation due.

An employee who brings suit for unpaid overtime compensation under the FLSA bears the burden of proving, with definite and certain evidence, that he performed work for which he was not compensated properly. *See Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1040 (2016) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute*, 29 U.S.C. §§ 251-262); *Johnson*, 758 F.3d at 630; *Clark v. Centene Co. of Tex., L.P.*, 104 F. Supp. 3d 813, 827 (W.D. Tex. 2015). Under the FLSA, every employer is required to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211. When the employer is in possession of the pertinent employment records, "the employee

---

[2] Even if AAY cannot establish a good faith defense, where, as here, the DOL supervised payment of unpaid overtime compensation owed to employees, "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . [to bring an action or become a party plaintiff in an action to recover] unpaid overtime compensation and an additional equal amount as liquidated damages." 29 U.S.C. § 216(c).

10

may easily discharge his burden by securing the production of those records." *Mt. Clemens Pottery Co.*, 328 U.S. at 687; *Tyson Foods, Inc.*, 136 S. Ct. at 1043. If the employer's records are inaccurate or inadequate, however, the employee can meet his burden by proving that he, in fact, performed work for which he was improperly compensated and produce sufficient evidence to show the amount and extent of the work "as a matter of just and reasonable inference." *Mt. Clemens Pottery Co.*, 328 U.S. at 687; *see Tyson Foods, Inc.*, 136 S. Ct. at 1043; *Johnson*, 758 F.3d at 630; *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 806 (5th Cir. 2011).

"Once the employee establishes a prima facie case, the burden then shifts to the employer to 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Johnson*, 758 F.3d at 630 (quoting *Harvill*, 433 F.3d at 441). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Clark*, 104 F. Supp. 3d at 827 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88); *see Johnson*, 758 F.3d at 630. "To be entitled to recovery, however, each employee must prove that the amount of [alleged compensable time], when added to his or her regular hours, amounted to more than 40 hours in a given week." *Tyson Foods, Inc.*, 136 S. Ct. at 1046.

AAY argues that the Hurricane Class members cannot show that they performed work or how much work they performed. AAY relies on Borne's deposition testimony where he could not identify any documents indicating the number of hours he purportedly worked or the rate for which he should have been paid for those hours. Neither could Borne, nor the opt-in Plaintiffs, provide the exact amount they seek in damages during their depositions. AAY asserts that without

providing evidence regarding the amount of hours worked or the amounts owed, the Hurricane Class members cannot prove damages by a preponderance of the evidence.

In response, Borne provides a chart listing the damages sought by the nine members of the Hurricane Class. The listed amounts reflect the employees' timesheets, dated between August 28, 2017, and August 30, 2017, produced by AAY, and testimony of the opt-in Plaintiffs regarding their hourly wages. Based on the evidence, the court concludes that summary judgment is not warranted on the issue of damages.

### 3.    Compensable Time

As an alternative basis for summary judgment of the Hurricane Class's claims, AAY argues that the employees' off-duty time was not compensable because the Hurricane Class members were waiting to be engaged. In order to "clarify the duties of employers concerning compensating employees for incidental activities that constitute work but which occur before, after, or during the work shift," Congress passed the Portal-to-Portal Act in 1947. *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562 (E.D. Tex. 2001), *aff'd*, 44 F. App'x 652 (5th Cir. 2002); *see* 29 U.S.C. § 254; *Bridges*, 875 F.3d at 225; *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 397 (5th Cir. 1976). The Portal-to-Portal Act provides, in relevant part:

> [N]o employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or . . . overtime compensation, for or on account of any of the following activities . . .

> * * *

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

"Principal activities" encompass all activities which are "integral and indispensable to the principal activities and [activities] with which the employee cannot dispense if he is to perform his principal activities." *Busk,* 135 S. Ct. at 517-18; *accord Bridges*, 875 F.3d at 225; *Dunlop*, 527 F.2d at 400-01. "Wait time is compensable when it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity." *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994), *abrogated on other grounds by Busk*, 135 S. Ct. at 519. For example, normal checking in or out and waiting in line to do so, changing clothes for the employee's convenience, washing up or showering, and waiting in line to receive paychecks are not principal activities. *Id.* (citing S. REP. NO. 80-48, at 47 (1947)); *accord IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005); 29 C.F.R. § 790.7(g).

Ultimately, however, the facts of the particular case are controlling, as an activity that is preliminary or postliminary under one set of circumstances may be a principal activity under other conditions. *See* 29 C.F.R. § 790.7(h); *see also Bridges*, 875 F.3d at 225 (collecting cases); *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 477 (E.D. Tex. 2013). As explained in further detail in § 790.7:

> Waiting before the time established for the commencement of work would be regarded as a preliminary activity when the employee voluntarily arrives at his place of employment earlier than he is either required or expected to arrive. Where, however, an employee is required by his employer to report at a particular hour at his workbench or other place where he performs his principal activity, if the employee is there at that hour ready and willing to work but for some reason beyond his control there is no work for him to perform until some time has elapsed, waiting for work would be an integral part of the employee's principal

13

activities. The difference in the two situations is that in the second the employee
was engaged to wait while in the first the employee waited to be engaged.

29 C.F.R. § 790.7(h); *accord Alvarez*, 546 U.S. at 41; *Vega*, 36 F.3d at 425-26; *Mireles*, 899

F.2d at 1414. Tests that turn on whether the activity benefits the employer or whether the

employer requires the activity have been rejected as overbroad. *Bridges*, 875 F.3d at 227-28

(citing *Busk,* 135 S. Ct. at 519).

The parties do not dispute that AAY offered additional pay to incentivize employees to

volunteer to work at the Cheniere Site during Hurricane Harvey. The assignment involved

12-hour shifts on duty, during which the employees were paid their normal hourly rate ranging

from $22.00 to $26.00, as well as 12-hour spans of time off duty, during which the employees

would be compensated to remain at the Cheniere Site. AAY maintains that it offered to pay the

employees $15.00 per hour when they were off duty. AAY contends that it, along with Cheniere,

provided food and sleeping accommodations in the event that the employees could not leave the

Cheniere Site safely due to weather conditions. AAY also asserts that even though it had no

obligation to pay its employees when they were not working, it later volunteered to pay the

employees their regular hourly wage for off-duty hours during the hurricane. According to AAY,

the employees' off-duty time was not compensable because they were permitted to cook, eat,

sleep, watch movies, make personal phone calls, and engage in other personal recreational

activities. AAY denies that its employees were forbidden to leave the premises, as evidenced by

the fact that at least three employees left the premises.

Borne contends that the employees were engaged to wait because AAY offered to pay the

guards for all the hours they worked, regardless of whether they were on duty or off duty. Borne

points out Kohut's testimony that "[b]ecause Cheniere required security personnel to be present

throughout the duration of Hurricane Harvey, [AAY] asked for volunteers to be a part of two rotating shifts—one shift would stand guard for twelve (12) hours while the other shift was off duty." Borne relies on *Armour & Co. v. Wantock*, in which the Supreme Court determined that the employees' time was compensable where:

> [T]he time during which these men were required to be on the employer's premises, to some extent amenable to the employer's discipline, subject to call, but not engaged in any specific work. The Company provided cooking equipment, beds, radios, and facilities for cards and amusements with which the men slept, ate, or entertained themselves pretty much as they chose. They were not, however, at liberty to leave the premises except that, by permission of the watchman, they might go to a nearby restaurant for their evening meal.

323 U.S. 126, 128 (1944). The employees in *Armour & Co.* were part of a private fire-fighting force maintained by the employer's insurance department and intended to supplement the city's fire-fighting force. *Id.* The Court's decision in *Armour & Co.* preceded the Portal-to-Portal Act.

Borne also relies on *Bright v. Houston Northwest Medical Center Survivor, Inc.*, in which the Fifth Circuit determined that an employee's on-call time was not compensable where:

> [The employee] did not have to remain on or about his employer's place of business, or some location designated by his employer, but was free to be at his home or at any place or places he chose, without advising his employer, subject only to the restrictions that he be reachable by beeper, not be intoxicated, and be able to arrive at the hospital in "approximately" twenty minutes. . . . [The employee] was not only able to carry on his normal personal activities at his own home, but could also do normal shopping, eating at restaurants, and the like, as he chose.

934 F.2d 671, 676 (5th Cir. 1991), *cert. denied*, 502 U.S. 1036 (1992). Despite Borne's argument that the Hurricane Class members were engaged to wait, it is undisputed that they were at the Cheniere Site "in the midst of a raging hurricane and flooded roads." In contrast, Borne relies on cases in which the employees' movement was restricted by their employers, not external circumstances. The record does not indicate that AAY expected its employees to wait actively for

an emergency or to respond at a moment's notice while they were off duty. Rather, the record reflects that AAY's method of fulfilling its contract with Cheniere—having its employees remain at the Cheniere Site during the 12 hours when they were off duty—was simply a means to accommodate its employees while they were waiting to engage and the weather conditions made it unsafe to leave the premises.

In addition, there is no indication that Cheniere demanded AAY to provide security around-the-clock by requiring the same employees to remain at the Cheniere Site for all hours in a 24-hour period. Indeed, in her affidavit, Kohut states that "[AAY] only required [its employees'] presence during their on duty shift to stand guard." AAY's offer to pay employees $15.00 per hour during their twelve hours of downtime merely demonstrates that AAY wanted to incentivize its workers to volunteer for work during inclement weather when they might not be able to leave the premises safely. This is supported by the Declaration of Kenneth Luce ("Luce"), an opt-in plaintiff who was a shift supervisor for AAY at the Cheniere Site during Hurricane Harvey, who stated that Martin Klucik ("Klucik"), an AAY Project Manager, indicated during a meeting held approximately one week before Hurricane Harvey that the employees who signed up to work at the Cheniere Site "would need to be prepared to stay there for the duration of the emergency." As the storm approached, Klucik sent an email stating that the employees at the Cheniere Site would be staying around-the-clock for the duration of Hurricane Harvey, the site was closed to non-essential personnel, and that no one on-site was permitted to leave without his permission. Luce further stated:

> My understanding was that this instruction was intended to ensure the safety of personnel who might otherwise attempt to travel to or from the site during hazardous hurricane conditions, and also to ensure that AAY would be able to

maintain sufficient personnel on-site to provide security coverage at the level it had committed to provide to Cheniere.

AAY's requirement that the Hurricane Class obtain permission to leave the Cheniere Site is similar to its advice to its other employees to avoid traveling during Hurricane Harvey. The email, sent on August 29, 2017, advised employees:

> While you are not at work at home waiting for the severe weather to pass, exercise caution. If you must leave your home for any reason, please remember to check the weather and the road conditions before you depart; and proceed with caution whenever you have to drive. Please do not take unnecessary risks that could put yourself or your family in danger.

Borne provides no evidence that the employees were required to resume their duties while they were off duty. Similarly, there is no evidence showing that the employees were prohibited from engaging in whatever recreational activities were available to them. Opt-in Plaintiff Margaret Ellison testified that the employees were able to use their off-duty time to wash their clothes, take showers, eat, cook, sleep, clean, and watch movies on a projection screen. There is no evidence that any employee's request to leave the Cheniere Site was denied, regardless of whether the employee had an emergency. Kohut testified that at least three employees obtained permission to leave.[3]

The evidence indicates that the principal activity of the employees who remained at the Cheniere Site during Hurricane Harvey was to work their 12-hour shifts, not to wait for their shift to commence or to be prepared to work during the 12 hours when they were off duty.

---

[3] It is undisputed that several employees left the Cheniere Site. Kohut indicated that during their downtime, Karl Daigle left to care for a pet and Danielle Manuel left to take care of a sick family member. Luce stated that he gave Jorge Gonzalez permission to leave before they started their shift because he had forgotten to bring his CPAP machine and that Marc Howeth received permission to leave while he was on duty because of a family emergency  The evidence does not clarify whether AAY permitted on-duty employees to leave only if they had a family emergency or whether AAY also required off-duty employees to demonstrate a family emergency before granting permission to leave the Cheniere Site.

Consequently, waiting for their shifts to begin and pursuing various activities during their time off-duty were not integral and indispensable, *i.e.*, activities with which they could not dispense if they were to perform their principal activity—security work. *See Busk*, 135 S. Ct. at 517; *Bridges*, 875 F.3d at 225-26. Accordingly, the court concludes that the Hurricane Class's off-duty time at the Cheniere Site is not compensable, and AAY's motion for summary judgment as to the Hurricane Class's FLSA claim for overtime wages is granted.

   C.  Fair Labor Standards Act—Retaliation

  The Fair Labor Standards Act prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). "A retaliation claim under the FLSA is subject to the *McDonnell Douglas* analytical framework." *Lasater v. Tex. A&M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012) (citing *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 577 (5th Cir. 2004)), *cert. denied*, 569 U.S. 1031 (2013). Thus, a plaintiff must first make a prima facie showing of "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008); *see Ardoin v. Police Jury of Evangeline Par.*, 547 F. App'x 401, 403 (5th Cir. 2013); *Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 705 (N.D. Tex. 2018); *Alvarez v. Amb-Trans Inc.*, No. 11-CV-179, 2012 WL 4103876, at *3 (W.D. Tex. Sept. 17, 2012).

  Once a plaintiff "meets this burden, the defendant must then articulate a legitimate, [non-retaliatory] reason for its decision. The burden then shifts to the plaintiff to demonstrate that the

proffered reason is a pretext for [retaliation]." *Lasater*, 495 F. App'x at 461 (citing *Hagan*, 529 F.3d at 624); *Carmack*, 321 F. Supp. 3d at 705. The plaintiff must show that engaging in a protected activity was the "but for" cause of the adverse action, which may be established by proving "by a preponderance of the evidence that the reasoning presented by the defendant[s] is a pretext for retaliation." *Carmack*, 321 F. Supp. 3d at 705 (quoting *Smith v. Sw. Bell Tel. Co.*, 456 F. App'x 489, 492 (5th Cir. 2012)); *see Lasater*, 495 F. App'x at 464; *Kanida*, 363 F.3d at 580. "A plaintiff can demonstrate pretext 'by showing that the employer's proffered explanation is unworthy of credence.'" *Carmack*, 321 F. Supp. 3d at 705 (quoting *Reeves, Inc.*, 530 U.S. at 143). In determining whether the employer's reasoning was pretextual, the court considers not whether the decision was erroneous, but whether the decision was made with discriminatory motive. *White v. Denton Cty.*, 655 F. App'x 1021, 1025 (5th Cir. 2016) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)); *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 327 (5th Cir. 2013) ("Courts do not consider whether the employer made an erroneous decision. . . . [T]he employer needs only to terminate the employee based on a good-faith belief that her activity was improper." (citations omitted)); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.").

According to the Third Amended Complaint, on September 7, 2017, AAY employees complained to their supervisor, Luce, about the unpaid wages and lack of overtime compensation for their work at the Cheniere Site after Hurricane Harvey. Borne avers that he felt unwell due to high blood pressure before the meeting, which began at 4:45 a.m., and that immediately after

the meeting, around 5:15 a.m., he obtained permission to leave work for medical attention. Borne contends that he went home to wait for his family doctor's office to open, but he later decided to go to the Golden Triangle Emergency Center ("GTEC") in Port Arthur, Texas, instead. The record indicates that Borne was at GTEC for approximately ninety minutes and that he was diagnosed with an anxiety attack and high blood pressure. Borne asserts that he received a return-to-work slip and intended to return to work the next day, Friday, September 8, 2017; however, his supervisor instructed him to return to work on Monday, September 11, 2017, instead. Then, on Saturday, September 9, 2017, he alleges that he was instructed not to return to work until further notice. Borne contends that on Monday, September 18, 2017, he met with his supervisor, the project manager, and one of AAY's owners, who informed him that he was terminated for abandoning his post after the meeting on September 7, 2017.

AAY does not dispute that Borne was participating in protected activity or that he was subject to an adverse employment action. At issue is whether Borne establishes the third element of an FLSA retaliation claim, *i.e.*, that a causal link exists between his participation in a protected activity and an adverse employment action against him. Borne maintains that the evidence of his not working again after his overtime complaint, AAY's hasty arrangements to pay additional money after the meeting, and his subsequent termination is sufficient to make a prima facie showing that he was terminated for complaining about the lack of overtime pay. AAY asserts that Borne's evidence regarding the timing of his termination does not show that he would not have been terminated "but for" complaining about his pay.

AAY specifically contends that Borne fails to show that he was not terminated for a legitimate, non-retaliatory reason—leaving his post—or that the basis of his termination was

merely pretextual.  Section 55.0 of the AAY Employment Handbook states, "Any employee who abandons their post without authorization from the Project Manager or Shift Supervisor without being properly relieved is subject to immediate termination."  In his Declaration, Luce asserts that after the meeting on September 7, 2017, when Borne informed Luce that he was not feeling well, Luce told Borne, "Do what you need to do," and allowed Borne to leave.  Thus, Luce contends that Borne did not abandon his post because the Early Relief Policy, Section 5.0 of AAY's Employee Handbook, provides:

> If a Security Officer foresees circumstances where he/she might not be able to remain on post for the entire tour, the Security Officer must notify the Shift Supervisor when he/she reports for duty, so that a Flex/On-Call Officer may be notified to stand by if the Security Officer needs to be relieved.  At the discretion of the Project Manager, the Security Officer may be placed on unpaid leave.

The evidence does not show that Borne was properly relieved from duty or that Klucik, who made the decision to terminate Borne, believed that Borne was properly relieved on September 7, 2017.  In an email to Klucik on September 11, 2017, Luce stated that at 5:15 a.m. after the meeting on September 7, 2017, Borne said to Luce, "I am not in the right frame of mind to be here, if I stay here I will do or say something that will make AAY look bad," and "Borne then walked out of the Security 5 wide [sic] and after speaking to several other officer [sic] he got into his vehicle and left."  Luce also told Klucik that he advised Borne to bring in a doctor's note; however, Luce did not mention giving Borne permission to leave.  Other employees submitted statements noting that Borne did not look well, but Luce stated in his Declaration that he "did not have the impression that [Borne] was in imminent danger or [Luce] would have called the paramedic unit."  The other employees also reported that Borne tried to persuade them to leave with him.  There is no indication that AAY regarded Borne's departure as consistent with the Early Relief Policy.

Rather, the record reflects that AAY terminated Borne for abandoning his post and because AAY did not believe Borne's medical excuse.[4] Accordingly, the court finds that AAY has shown that it had a legitimate, nonretaliatory reason for terminating Borne.

AAY further avers that it did not retaliate against any employees, such as Elias Ibarra, one of the opt-in Plaintiffs, who complained about overtime pay. In response, Borne alleges that no pretextual reasons were available for AAY to terminate other employees. Borne also notes that AAY imposed only probation on two employees[5] who committed the terminable offense of theft. Kohut testified that the two employees took cots from the Cheniere Site after they were relieved from their duties. Many items and supplies were brought to the Cheniere Site in anticipation of Hurricane Harvey. Afterward, AAY purportedly told its employees that they could take supplies from the site. Kohut explained that the two employees were disciplined for theft because they assumed, without asking, that they could take the cots. In addition, although both abandonment of one's post and theft are terminable offenses, the parties have directed the court's attention to the warning in the AAY Employee Handbook that an employee who abandons his or her post is subject to immediate termination. Borne offers no evidence that the theft committed by the two employees warranted termination under the circumstances. Moreover, there is no indication that other employees who ostensibly abandoned their posts received discipline that was less severe than termination. Evidence that AAY did not terminate Meehl, an employee who complained about not receiving overtime pay and who was disciplined for committing theft, supports the position

---

[4] Under Section 77.1.37, feigning illness or injury, which is AAY's position on Borne's visit to GTEC, is also a terminable offense.

[5] One of the two employees, Casey Meehl ("Meehl"), is an opt-in plaintiff. Thus, contrary to Borne's assertions, AAY had a pretextual reason to terminate Meehl for the purported theft.

that AAY's motive for terminating Borne was not his engaging in protected activity. Having considered the entire record, summary judgment is warranted because Borne has not adduced sufficient evidence to show that he would have remained employed but for his complaining about AAY's failure to pay overtime.

III.   Conclusion

Based on the foregoing analysis, AAY's Motion for Summary Judgment (#64) is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED with respect to the Hurricane Class's FLSA claim for overtime pay and liquidated damages; GRANTED with respect to Borne's FLSA retaliation claim; and DENIED with respect to the Training Class's recovery of liquidated damages for their compensable overtime pay for drug testing.

SIGNED at Beaumont, Texas, this 21st day of October, 2019.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE